Carr, J.
after stating the substance of the pleadings very succinctly yet fully, said—The original bill shews no case yrhatever against the bank; and I hold it most clear, that the bank might have demurred generally to that bill. It is true, there is a prayer for general relief; but that prayer, broad as it is, can justify no other relief than such as the case made calls for. Here there is no case made. It wa.s said, in the argument, that the plaintiff, by stating in his bill, that the sureties alleged that the bank was liable for the stock, made their answers a part of his bill, by adoption; and thus made a case charging the bank. This proposition is wholly new to me, and, as I think, at variance with the best settled rules of practice. The answers of the sureties were filed long after the bill, and in the bill, the plaintiff states, that he did not understand the ground on which the sureties contended for the liability of the bank. He does not call on them to state that ground; he makes no reference to it as forming a part of his case; but, on the contrary, seems to repudiate it, by asserting that he holds the sureties immediately liable for the stock, and praying specific relief against them, according to the case made, and making no case and asking no relief of any kind against the bank. But suppose the plaintiff had meant to refer to the answers as a part of his case, could he, in this way, have made *426 them so ? Not by any rule of practice known to me. We know, that the answer of one defendant can neither be read for nor against, nor in any way affect, any other - & J , defendant. 1 hey are entirely distinct and unconnected; especially in a case like this, where the sureties and the bank have opposing interests, each striving to avoid a loss, which must fall upon the one or the other. In proof of the rule that the answer of one defendant, can in no way affect another, I may refer to the practice so well known, of one defendant getting an order of court to take the deposition of another, to any point where he is not interested. The answers, then, of the sureties, and all the issues made by them, and all the documents and evidence in support of those issues, are to be thrown entirely out of view, in deciding the questions between the plaintiff and the bank.
I have said the bank might have demurred to the original bill. But it did not; it answered, stating simply, the number of shares which had stood on its books in the name of James Craig, guardian of the plaintiff; the succession of Fox to the office of guardian; the transfer of the stock to him; his transfer to Withers; and the legal right which he had thus to dispose of it, with the obligation of the bank to suffer the transfer. The amended bill charged, that Craig had never executed the power of attorney authorizing the transfer of the stock to Fox. The bank answered that he had. To the two answers, there were replications. And these made the sole issues between the parties. The execution by Craig of the power of attorney to Dan&ri&ge to transfer the stock to Fox, is clearly established. The power and legal title of Fox to dispose of the stock, is proved by many cases: it is not worth while to cite them. The actual transfer to Withers, is proved by the bank officers. Thus, the matters of fact and law in issue between the plaintiff and the bank, are all in favour of the latter.
*427 A good deal of argument was founded on the proceedings in the county court of Prince William; the bill filed by the sureties against Fox See. and the process thereon said to be served on the president of the bank; the summons of Fox to give counter security; and the revocation of his guardianship. The answer to all this is, that it forms no part of the case between the plaintiff’ and the bank. The bill charges no such facts, refers to no such records. The bank therefore could neither deny them by answer, nor take evidence to disprove them ; and it would be contrary to law, reason and practice, to allow them the least influence, as against the bank. They come out in the answers of the other defendants, and may be duly weighed there. If the plaintiff' had chosen to amend his bill and allege these matters, the bank must have made defence against them; and then wo must have considered their influence. Or the sureties might, perhaps, have filed a cross bill and' thus have brought them to bear against the bank. But in the present aspect of the case, they make no part of it. My own opinion is, that if they did, they would not justify any decree against the bank.
I think the decree should be reversed, and the bill dismissed as to the bank; and either a decree entered here against the last set of sureties of Fox, or the cause sent back to be further proceeded in. Perhaps, the last may be best; but in this I shall not differ with my brethren.
Brockenbrough and Cabell, J. expressed their entire concurrence.